## APPEAL OF C. R. EARLEY ET AL.
### [ELK COUNTY v. EARLEY.]

APPEAL FROM THE DECREE OF THE COURT OF COMMON PLEAS OF ELK COUNTY, IN EQUITY.

Argued April 30, 1888—Decided October 1, 1888.

1. A deed for an interest in land for the use and benefit of a county, made to individuals, as commissioners appointed by the act creating the county but whose duties under the act were to determine when county commissioners should be elected and qualified, is valid and effective, though executed after the election and qualification of others as county commissioners.

2. Where a county has the right, without limit, to take water from a spring by means of water pipes laid, for the use of the public buildings, an interference with the right of the commissioners to enter upon the lands where the spring is situate, for the repair of the basin and the renewal of the pipes in order to increase an inadequate supply, will be restrained by injunction.

3. Though the mere denial of a right in the lands of another does not constitute a disturbance of the right so as to give equity jurisdiction, yet, where the right is clear and there is no serious controversy upon any material fact, a court of equity may restrain threatened interference with the exercise of the right, without a prior establishment of it by trial at law.

4. Jurisdiction in equity depends not so much on the want of a common law remedy, as upon its inadequacy; and its exercise is a matter which often rests in the discretion of the court, to determine whether, under all the circumstances and in view of the conduct of the parties, the intervention of equity jurisdiction may not be required: Bierbower's App., 107 Pa. 17.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 119 July Term 1887, Sup. Ct.; court below, No. 1 November Term 1885, C. P. in Equity.

On November 17, 1885, a bill in equity was filed in behalf of the county of Elk, by its commissioners, against C. R. Earley, Elizabeth Earley and James H. Hagerty, in which it was averred:

That on or about November 5, 1843, John J. Ridgway, by deed duly proved and recorded, did grant and convey unto Timothy Ives, Jr., J. W. Guthrie and Z. H. Eddy, commissioners of the county of Elk, and their successors in office, the right to freely use and enjoy from time to time and at all times thereafter, without limit, so much of the water of a large spring upon the grantor's lands, south of the town of Ridgway, as might be necessary for the use of the county of Elk and her public buildings, with the right to convey the same by means of pipes laid through or upon the land of the grantor to the public square; the surplus of the water, over and above what would be needed for the supply of the public buildings, to be held in trust for the citizens of Ridgway.

That soon after the making of said grant, the county, by its commissioners, caused a pipe to be laid to said spring and a portion of the water therefrom to be conveyed to said public square and for said public buildings, which said pipe (or the substitutes therefor), had been kept and maintained by the plaintiff ever since, and the said water was necessary for the safe and healthful use and occupancy of the public buildings erected and maintained by the plaintiff.

That by reason of the increase of the population and business of the county, necessitating the erection of large and expensive new public buildings, together with the increase of the population of the town of Ridgway, the supply of water afforded

by the pipe theretofore in use was wholly inadequate, and it had become necessary for the plaintiff to repair the basin or reservoir collecting and holding the waters of said spring, and to replace the said pipe by one capable of carrying and conducting a larger supply, and the plaintiff had made preparations for such repairs and renewal.

That the defendants were in possession of the lands upon which said spring was located and through which the pipe from said spring was laid, and threatened to arrest the agents, servants and employees of the plaintiff if they or any of them entered into or upon said lands for the purpose of repairing said basin or relaying said pipe, by reason whereof the plaintiff was greatly delayed, etc.

The bill prayed for an injunction, preliminary until hearing and perpetual thereafter, restraining interference with the repairing of said reservoir and the relaying of said pipe; and for other relief.

The answer of the defendants, so far as material, admitted the grant to Ives, et al., as alleged, but averred that at the time thereof they were not commissioners of Elk county, and had no authority to receive grants for the use or benefit of the county; denied that any such rights were conferred upon the plaintiff by said grant as was alleged, and averred that Reuben Winslow, John Brooks and Chauncey Brockway were at the date of said grant the commissioners of said county, duly elected, qualified and acting; admitted that the county had laid a pipe from the spring and had maintained it for twenty-one years prior to 1873, for the purpose of supplying the public buildings with water, but averred that C. R. Earley had built and maintained the reservoir now at said spring at his own expense, and claimed the right to keep and maintain the reservoir and premises as they had theretofore been kept; denied that they had ever threatened to arrest the servants of the plaintiff employed to keep and maintain the pipe put in and used by the plaintiff; denied further the right of the plaintiff to enter upon the premises of defendants and to meddle with the reservoir, or in any way disturb the premises any more than was necessary to regulate the supply of water coming to the county buildings, and averred that the water already conveyed by said pipe to said buildings was sufficient for the use

thereof, and that the plaintiff permitted the water so conveyed to be misused and wasted.

Issue having been joined, the cause was referred to *Mr. J. C. Johnson*, as examiner and master, who heard the testimony and made report as follows:

### FINDINGS OF FACT.

The county of Elk was erected under the act of April 18, 1843, P. L. 312, and Timothy Ives, Jr., James W. Guthrie and Zachariah H. Eddy, were appointed commissioners with power to accept grants, etc., with a proviso that as soon as the county commissioners are elected and qualified, the duties enjoined on them should cease, and should be performed by the county commissioners so chosen and elected. On November 5, 1843, John J. Ridgway made the grant of this spring and right of way to lay pipes as follows:

" This indenture made . . . . . between John J. Ridgway, of the city of Philadelphia, of the first part, and Timothy Ives, Jr., of Potter county, James W. Guthrie, of Clarion county, and Zachariah H. Eddy, of Warren county, in the state of Pennsylvania, commissioners of the county of Elk, of the second part, Witnesseth: That in consideration of one dollar lawful money of Pennsylvania, paid to the said party of the first part by the said party of the second part, the receipt whereof is acknowledged by these presents, the said party of the first part for himself, his heirs and assigns, covenants and grants with and to the said party of the second part and their successors in office, that it shall be lawful for the said party of the second part and their successors in office and their agents and servants, to freely use and enjoy from time to time and at all times hereafter, without limit, so much of the water of a certain large spring situate on the land of the said party of the first part, back or south of the town of Ridgway, in the county of Elk, late Jefferson, as may be necessary or convenient to supply the public buildings about to be erected for the said town of Ridgway for the use of the said county of Elk, and for the use of the said public buildings, and for no other use or purpose whatever; and the said party of the first part further covenants and grants with and to the said party of the second part, and their successors in office, that it shall be lawful for the said party of the second part and their successors in office. and their agents and servants, to convey and conduct, by means of pipes laid through or upon the land of the said party of the first part, in a straight or winding course or direction as they may think fit, the said water from the said spring to the public square of the said town, or where the said public buildings shall be erected; all the surplus water of the said spring over and above what will be needed for the supply of the public buildings as aforesaid. is hereby granted by the said party of the first part to the said party of the second part, and their successors in office, in

trust nevertheless, for the use and benefit of the inhabitants of Ridgway, who shall be entitled to use and enjoy the same free of all charge and expense, and shall also have the privilege of conducting the same by means of pipes along the streets and alleys of the said town of Ridgway to their respective houses, to be used for their own private advantage, the said pipes not to communicate with the said spring, but with the fountain to be erected at the said public square or place where the water shall be conducted, for the use of the public buildings aforesaid.

In witness whereof, etc.

This instrument was proven January 13, 1858, and entered for record February 11, 1858, in Elk county, in Miscellaneous Book A, at page 150.

On October 16, 1843, Chauncey Brockway, John Brooks and Reuben Winslow, qualified as commissioners of Elk county and begun to act as such.

On June 10, 1850, the commissioners of Elk county met at their office and entered into a contract with Sylvester Squires to lay a pipe to the spring and bring the water therefrom to the court house, and in pursuance thereof, a 2-inch pipe was laid, and the water was brought to the public square, where it was used for the county buildings and by the citizens of Ridgway.

On March 9, 1859, the commissioners of Elk county entered into an agreement with J. S. Hyde to furnish stone pipe and lay the same from the spring to the public square, fix the head of the spring, make a reservoir at the public square and carry off the waste water, the county to pay the expense and the commissioners to have supervision of the work. This was laid and was $2\frac{1}{4}$ inches in diameter. It was brought down to the corner of the public square. A small stone culvert was made at the head of the spring, that was closed by a plank door and locked with a padlock, and the key was held under the control of the commissioners. The use of the water was continued by both the county and the citizens of Ridgway.

On July 7, 1859, John J. Ridgway and wife conveyed by deed to Albert Willis, of Ridgway, out-lot No. 18, it being the lot upon which the spring is, " reserving the right for the water from the large spring, to be brought to the public square in such way as may be desired, and of repairing and relaying said conveyance at any time without molestation." Willis went into possession under this conveyance while the pipe that Hyde laid was in existence, and the defendants are in possession under Willis

and claim title through him. As I understand they went into possession in about 1873–4. Willis used the water from this spring in common with other citizens of Ridgway, taking it from the surplus at the corner of the public square.

In 1874, C. R. Earley, one of the defendants, being in possession of the lands, employed a man to put in a reservoir, and at the same time he laid a pipe from the spring to his house. This reservoir was a small one, about 8 by 10 feet; and this and the pipe laid were without any arrangement with the county, but were done, as Dr. Earley explains, to get purer water. In doing this the county pipe was not disturbed.

After Dr. Earley had completed this work in 1874, the flow of water through the county pipe was found to be insufficient for the purposes of the county buildings, and the county commissioners entered into an arrangement with Dr. Earley, whereby he extended his pipe to the corner of the court house lot, and erected a hydrant there at an expense to himself of about one hundred dollars. There has been some conflicting testimony in regard to this agreement. . . . . .

I think the clear weight of evidence is with the theory that the arrangement made with Dr. Earley in 1874, was only of a temporary character, and not made with the view of surrendering any of the rights of the county to the spring.

In 1875, Dr. Earley took out the reservoir, made by him in 1874, and made a much larger one, and built a house over it and expended about $2,000 in doing so. He also extended the pipe from the corner of the court house square into the sheriff's kitchen at his own expense; the latter he did, it would seem, at the request of the commissioners, but the reservoir was made by him without any agreement with, or authority from, the commissioners to do so. In putting in this new reservoir the county pipe was laid about 6 inches lower in the water than Dr. Earley's. Nothing more whatever was done with the spring or pipes leading from it, until 1879–80, when the new court house was built.

In 1879–80, upon the completion of the new and expensive court house, the county commissioners, in order to properly supply water, laid a 2½-inch wrought-iron pipe from the spring to the court house, in the place of the stone pipe laid by Hyde in 1859. They run this pipe up to the upper floors of the

court house where they took from it a supply for the court house, and from there it conducted the surplus water to the box at the corner of the public grounds; the citizens of Ridgway take water from this box by seven pipes laid to different parts of the town. This state of affairs remained until the summer of 1885, when the commissioners erected and constructed a large and expensive jail and sheriff's residence, and a much larger supply of water was needed for the county buildings, they being arranged with urinals, water closets, bath tubs, laundry and steam heating apparatus. For some reason, in the summer of 1885, the supply failed to a considerable extent and there was for a month or two prior to the filing of the bill in this case, not enough water for court house or jail, and the supply to the citizens of Ridgway also failed. The county buildings would become unfit for use without a supply of water. This spring is located about fifty-six feet above the level of the ground at the court house. It is shown to be a large spring, that would probably fill a 5-inch pipe, and, if economically used for domestic purposes, would in all probability supply the people of Ridgway, besides the county buildings. There is no other source from which a sufficient supply could be obtained without great expense.

In about August, 1885, when the supply of water failed to be enough for the public buildings, the commissioners of Elk county, Gardner, Kronewetter and Carman, contemplating laying 5-inch pipe to the spring in place of the 2½-inch pipe, went together to find the course and the ground occupied by the old pipe. When they came to the land of the defendants, and before they entered thereon, they were met by the attorney of the defendants, who forbid their going on the premises, and threatened to arrest them if they did so. The commissioners obeyed the warning, did not then go to the spring, or upon the defendants' lands, but went away, and thereupon they brought this action by bill. . . . .

## CONCLUSIONS OF LAW.

It is contended by the defendants that the deed of November 5, 1843, from John J. Ridgway to Timothy Ives et al., vested no title in the commissioners of Elk county, nor in the county; that Ives et al. were not commissioners at the date

and delivery of the deed, and if they had been, a deed to individuals merely describing them as officers of a corporation would vest the title in the individuals, and not in the corporation. It is true that Ives et al. were not at that date the county commissioners. Yet I do not think I should adopt this view in regard to this deed. A plain mistake was made in naming the grantee; but it is clear upon the face of the instrument who the grantee was intended to be. The intention of the grantor is clear, and I think this deed in a court of equity in this state will be treated as if it had been made to the county of Elk. It is the peculiar province of a court of equity to reform deeds and other written instruments that have been made wrong through mistake. It seems to me that the courts properly exercise great care to uphold written instruments and carry out the intention of the parties where it can be done without violating a positive rule of law or a statute. [Discussing Lant's App., 95 Pa. 279; Lawrence Co. v. Leonard, 83 Pa. 206; Bispham's Eq. 244; Broom's Leg. Max. 482; Huss v. Morris, 63 Pa. 372, the master proceeded:]

I think that the intention of the grantor to make this conveyance effective for the county of Elk as the grantee, is plain on the face of the deed. There was such a grantee in existence. The mistake in naming Ives et al. is clear. In my judgment this mistake should be corrected in a court of equity, and the intention of the grantor made effectual by holding that the county of Elk took a good title under this deed.

There was some contention in this case as to the power of the county to take as a trustee for the citizens of Ridgway. I have not thought that the rights of the citizens of Ridgway were directly involved and necessary to be decided in this issue; but the question would seem to be pretty clearly settled by the case of Lawrence County v. Leonard, and the cases there cited.

If I am right in the conclusion that the deed should be upheld, and that the county of Elk may claim a good title thereunder to the easement, then the next thing to be determined is, has the county parted with that title or any part thereof? . . . .

It is earnestly contended by the defendants that a court of equity has no jurisdiction; that the acts alleged in plaintiff's

bill to have been done and threatened by the defendants are not contrary to law and equity; that the mere denial of a right does not constitute a disturbance of the exercise of that right; that in a case situated as this one is the plaintiff should first establish his right in an action at law and then come into chancery if necessary for the protection of the legally established right; that the bill does not allege irreparable injury and must therefore be dismissed.

The industry of the counsel for the defendants has furnished me with a number of authorities that I have carefully examined.

The case of Downing v. Baldwin, 1 S. & R. 303, is cited, and the doctrine of that case is sought to be applied to the facts of this case. In that case it appears that the plaintiff asked permission to use a water course that he claimed a right to use, and the defendant refused to give his permission. The court held this mere denial of the right did not constitute a disturbance of the exercise of that right. But between that case and the one at bar there is, it seems to me, a clear distinction of importance, upon the facts. In this case the plaintiffs set out to exercise the right claimed, and were met by the defendants at the place of entry on their lands, and were forbid entering thereon, and were threatened with arrest if they did enter. There was something in this on the part of the defendants that was active in its nature, and from which it could be implied that they intended to resist the exercise of the right claimed. It was an act opposing the plaintiffs, accompanied by a threat. Moreover, it would seem to me that equity would have jurisdiction under the circumstances, to prevent a multiplicity of suits, for the constant use of this right is necessary for the public: Bitting's Appeal, 105 Pa. 521.

In this connection the case of Hagner v. Heyberger, 7 W. & S. 104, was cited by defendants. This was a nisi prius decision, and so far as it relates to the question, it seems to have been repudiated by the Supreme Court. In Stockdale v. Ullery, 37 Pa. 487, LOWRIE. C. J., says, "The Supreme Court never formally sanctioned the dictum in that case." And in Wistar v. McManes, 54 Pa. 328, STRONG, J., says, "Our more modern decisions do not recognize the doctrine asserted by Judge SERGEANT at nisi prius, 7 W. & S. 104, that our courts are powerless to restrain acts contrary to equity."

But the defendants urge, upon the authority of Rhea v. Forsyth, 37 Pa. 503, that the plaintiff's rights are not acknowledged, and they must therefore be established at law before resort can be had to a chancellor. The authority of this case I fully recognize. There is a long line of cases to the same effect, among which may be mentioned: Brown's Appeal, 62 Pa. 17, and Minnig's Appeal, 82 Pa. 373, and their authority remains undoubted; but it does not seem to me that the doctrine of those cases is applicable to the facts of this case. In Rhea v. Forsyth, there was no writing witnessing the right claimed, and there was much conflict in the testimony relating to both the grounds on which the plaintiff rested his claim. In Brown's Appeal, there was a serious dispute about the very terms of the contract that had not been reduced to writing. In Minnig's Appeal, the plaintiff's rights had been made more than doubtful by the finding of the master, and an action of ejectment was pending. In the case in hand the plaintiff's title is by deed, about the due execution of which there is no dispute. There appears to be no serious conflict in the testimony upon any material point in the case. There is no contention that requires to be settled by a jury. A chancellor may declare the rights of the parties upon the construction of writings and upon facts not seriously controverted. Under such circumstances the right is clear, and it would seem to me that, as it was held in Hacke's Appeal, 101 Pa. 245, "It need not first be established by a suit at law, nor is it necessary that the owner should prove special damage to entitle him to a decree. In the Commonwealth v. Railroad Co., 24 Pa. 159, it was also held that "in a case where public rights, or private rights secured by contract are invaded, and an injunction is asked for in order to protect them, no question of the amount of damage is raised, but simply one of right." In Bitting's Appeal, 105 Pa. 517, it is held that "when the facts show a legal title in the complainant, it is not a prerequisite to the enforcement in equity of equitable rights incident thereto, that the complainant's legal title be established in an action at law; that actions at law would not afford an adequate remedy."

I am therefore of the opinion that I should recommend the following decree: . . . . .

Master's Report.

Among the exceptions filed by the defendants to the foregoing report, overruled by the master and then renewed in court, were the following : That the master erred

2. In finding as a matter of fact that the arrangement between C. R. Earley and the county commissioners was only of a temporary character.[2]

9. In finding as a matter of law that the writing from Mr. Ridgway to Ives et al. vested the title to the spring in the county of Elk.[6]

13. In finding as matter of law that acts allowed to have been done and threatened by the defendants were sufficient to support a bill for an injunction.[5]

15. In not finding as a matter of fact that the plaintiff's bill contained no allegation of irreparable injury.[10]

18. In not finding as a matter of law that a court of equity had no jurisdiction in this case, until the rights of the parties were settled by an action at law.[8]

25. In finding as a matter of law that a court of equity had jurisdiction to construe the writing from Mr. Ridgway to Ives et al., dated November 5, 1843.[12]

After argument of the said exceptions, the court, MAYER, P. J., on May 27, 1887, filed an opinion confirming the report of the master, and signed a decree which was as follows :

And now, to wit, May 23, 1887, this cause came on to be heard and was argued by counsel, and thereupon, upon consideration thereof it is ordered, adjudged and decreed as follows, viz. : That the defendants in this case be perpetually enjoined from molesting, hindering or impeding the plaintiff, her agents, servants or employees, and preventing them from fixing, repairing or rebuilding the reservoir at the spring on the out-lot 18, or relaying or repairing the pipe or pipes leading therefrom to the public square, or entering or re-entering upon the lands when, where and in such manner and way as may be necessary for the purposes above named.

The plaintiff having received the benefit of the improvements made by the defendants to the spring, it is ordered that the plaintiff pay the costs.

The defendants then took this appeal, specifying as error, inter alia :

2. The overruling of defendants' 2d exception.[2]

5. The overruling of defendants' 13th exception.[5]

6–12. The overruling of defendants' other exceptions.[6 to 12]

*Mr. Charles B. Earley* and *Mr. Rufus Lucore,* for the appellants :

1. At the date of the deed to Thomas Ives et al., November 5, 1843, the grantees were not commissioners of Elk county. The minutes of the board show that at that date, Chauncey Brockway, John Brooks and Reuben Winslow, had been duly qualified and were acting as commissioners. A deed to individuals, merely describing them as officers of a corporation, would vest title in the individuals only : 3 Washb. Real P. 237.

2. If the acts of the defendants alleged to have been done and threatened, are not contrary to law and equity, a court of equity has no jurisdiction : High on Injunctions, § 550 ; Hagner v. Heyberger, 7 W. & S. 104 ; Downing v. Baldwin, 1 S. & R. 303 ; Adams' Equity, 331. The act alleged is, that defendants threatened to arrest the agents, etc., of the plaintiff ; but to give notice that an arrest would be made, was to give notice that a legal act would be performed, and to say that a legal act is contrary to law is absurd. The case at bar is not distinguishable from Downing v. Baldwin, supra ; and if there is a doubt as to the sufficiency of the allegations, that doubt is to be resolved in favor of the defendants.

3. The bill alleges that the defendants are in possession of the land on which the spring in dispute is situate. The answer admits the possession, but denies the right claimed. If the claim of the plaintiff amounts to a corporeal hereditament, and gives the right to the possession of the spring and the land on which it is situate, with the right to excavate and build a reservoir, then the plaintiff is attempting to obtain through the decree of a court of equity what might be obtained by an ejectment, and in such case the bill is to be dismissed : Rhea v. Forsyth, 37 Pa. 503 ; North Penn. Coal Co. v. Snowden, 42 Pa. 488 ; Bitting's App., 105 Pa. 517. And see High on Injunctions, § 486 ; Washb. Easements and Servitudes, 700 ; Grubb's App., 90 Pa. 228.

4. Moreover, " a court of equity, which is never active in relief, against conscience or public convenience, has always re-

Arguments.

fused its aid to stale demands when a party has slept upon his rights and acquiesced for a great length of time:" Smith v. Clay, 3 Bro. C. C. 639, n. 1; Watts's App., 78 Pa. 370; Ashhurst's App., 60 Pa. 290; Heilman v. Canal Co., 37 Pa. 100; Holmes's App., 79 Pa. 290; Hilliard on Injunctions, § 34.

*Mr. W. W. Ames* and *Mr. Geo. A. Rathbun*, for the appellee:

1. The findings of fact by an auditor or master will not be set aside unless the error clearly appears: Thompson's App., 103 Pa. 603; Bedell's App., 87 Pa. 510; Atkinson's App., 10 Cent. R. 48.

2. As to the fifth assignment of error, it is clearly established that when the supply of water failed, and the commissioners went upon the defendants' premises for the purpose of examining the ground and ascertaining what was necessary to be done, they were forbidden to enter, and threatened with an arrest. The lack of water at the county buildings was an evil that required a prompt and speedy remedy. The commissioners had no personal interest, and could not await the termination of an action of trespass or a criminal action. Moreover, in the deed from Ridgway to Willis, under which defendants hold, there was a full and complete reservation of the right of the water from the spring, to be brought to the public square "in such a way as may be desired, and the repairing and relaying of said conveyance without molestation."

3. It is not enough that there is a remedy at law; it must be plain and adequate, or, in other words, as practical and efficient to the ends of justice and its prompt administration, as the remedy in equity: Boyce v. Grundy, 3 Pet. 210; Watson v. Sutherland, 5 Wall. 74; Story Eq. J. 24; hence, the exercise of chancery powers must often depend on the sound discretion of the court: Bierbower's App., 107 Pa. 14; Brush Electric Co.'s App., 114 Pa. 574. So a bill may be sustained solely on the ground that it is the most convenient remedy: Kirkpatrick v. McDonald, 11 Pa. 387. "We think our tribunals should lean to a liberal exercise of the powers which the legislature after long hesitation has conferred, without, however, encouraging the technical niceties in the modes of procedure and forms of pleading which have tended rather to retard than to facilitate the great object of the jurisdiction:" Kirkpatrick v. McDonald, supra.

4. The commissioners had no power to make the alleged agreement of surrender, and if they had such power, the rights vested in the county were an interest in land, and the statute of frauds prevents a transfer except in writing: Reed on Statute of Frauds, § 718; Collam v. Hocker, 1 R. 107. Moreover, " In actions respecting real property, when the rights of the parties are admitted in the pleadings, or otherwise clearly appear, an equity based upon those rights, superinduced by the acts of the parties, may be asserted by bill in equity and appropriate equitable relief obtained without a prior establishment of said rights in a court of law: " Ferguson's App., 117 Pa. 426. And see Bitting's App., 105 Pa. 517; Scheetz's App., 35 Pa. 88; Adams's App., 113 Pa. 449. The remedy by injunction being preventive in its nature, it is not necessary that a wrong should have been actually committed before a court of equity will interfere: High on Injunctions, § 31; McCarthur v. Kelly, 5 Ohio 154 ; Lawrence Co. v. Leonard, 83 Pa. 206.

5. The grant to the county was without limit, and not, therefore, to be confined to the buildings at the time about to be erected: Alden's App., 93 Pa. 182. The allegation of irreparable damage would have been merely formal, and this court would allow an amendment if necessary: Darlington's App., 86 Pa. 513. There is no laches, no estoppel: Larkins's App., 38 Pa. 457; Edelman v. Yeakel, 27 Pa. 26. Ejectment will not lie for an incorporeal hereditament: Black v. Hepburne, 2 Y. 331.

OPINION, MR. JUSTICE STERRETT:

The learned master's report, which was approved by the court below, contains such a clear and accurate statement of all the material facts of the case, and of the principles of law applicable to them, that, in connection with the opinion of the learned president of the Common Pleas, it may be adopted as an ample vindication of the decree. There appears to be nothing in the findings of fact or conclusions of law that requires special notice. The specifications of error are not sustained.

It is clear that under Mr. John J. Ridgway's deed of November 5, 1843, the county of Elk was invested with all the rights and privileges specified in that instrument, and that those

vested rights were neither modified nor abridged by any
thing that was subsequently done by the commissioners.   The
arrangement made with Earley in 1874, as the master correctly
found, was only of a temporary character, not made with the
view of surrendering any of the rights of the county to the
spring.   The appellants, in possession of and claiming title to
the lot on which the spring is located, had no occasion to inter-
fere with the appellees in the exercise of their right "to freely
use and enjoy .. . . . without limit, so much of the water"
of the spring in question, as might be necessary or convenient
to supply the public buildings of the county, etc., according to
the true intent and meaning of the grant.   In the deed of
July 7, 1859, conveying said lot, the right of the county to the
use of the spring, acquired sixteen years before, is distinctly
recognized and reserved by the grantor thus : "reserving the
right for the water from the large spring to be brought to the
public square in such way as may be desired, and of repair-
ing or relaying said conveyance at any time without molesta-
tion."

The subject of complaint in the fifth specification is the mas-
ter's conclusion of law, "that the acts alleged to have been
done and threatened by the defendants were sufficient to sup-
port a bill for an injunction."

There was no error in this.   When the supply of water
through the pipes failed and the commissioners went to the
premises occupied by defendants and on which the spring is
located, for the purpose of examining the ground and ascer-
taining what was necessary to be done, they were forbidden to
enter and threatened with arrest if they attempted to do so.
As public officers, intrusted with the care and management of
the public property, and acting clearly within the line of their
duty, the commissioners were not bound to wait until some
overt act of violence was committed by the defendants, nor to
provoke a breach of the peace by ignoring the threats that were
made and proceeding to discharge their duty.   The situation
was one that required prompt and efficient action.   The con-
tinued lack of water at the public buildings might have been
attended with serious consequences, especially in case of fire.
It would have been unwise to wait until the termination of an
action of trespass or even of a criminal action.   Under the cir-

cumstances, they acted discreetly as well as legally in promptly appealing to the court for protection from threatened injury and interference with the proper discharge of their duty. Nobody doubts the soundness of the principle that equity will not assume jurisdiction where there is a full, complete and ade-quate remedy at law. In this case no legal remedy that could have been resorted to would have been either full, complete or adequate. As was said in Bierbower's App., 107 Pa. 14, 17, " Jurisdiction in equity depends not so much on the want of a common law remedy as upon its inadequacy, and its exercise is a matter which often rests in the discretion of the court; in other words, the court may take upon itself to say whether the common law remedy is, under all the circumstances and in view of the conduct of the parties, sufficient for the purposes of complete justice, or whether the intervention of chancery may not for that purpose be required and beneficially applied: Bispham, Eq., § 484."

But, as already intimated, it is not our purpose to elaborate subjects that have been so fully and ably discussed by the learned master, and correctly disposed of by the court below. The unjustifiable interference of the defendants would perhaps have warranted the court in going a step further than it did, and imposing the costs on them, but that question is not before us.

> Decree affirmed and appeal **dismissed** at . the costs of appellants.